OPINION
{¶ 1} Plaintiffs-appellants, Howard L. Byrd, individually and as administrator of the estate of Garnet Byrd, and Heather Byrd, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, the City of Columbus and Richard Kirby, formerly an officer with the Columbus Division of Police.
 {¶ 2} This case arose out of an automobile collision between a police cruiser driven by appellee Kirby and an automobile driven by appellant Howard Byrd, resulting in injuries to Howard Byrd and the death of his wife, Garnet Byrd, and injuries to his daughter, Heather Byrd.
 {¶ 3} Appellants initiated this matter with a complaint in the Franklin County Court of Common Pleas in 1997, asserting a number of state and federal law claims against the present defendants and additional parties. The matter was dismissed, refiled, and eventually removed to federal court, where the defendants ultimately obtained a decision granting summary judgment on the plaintiffs' federal law claims but declining to exercise supplemental jurisdiction over the state law claims.
 {¶ 4} Appellants accordingly refiled a complaint in the Franklin County Court of Common Pleas, naming this time only the present appellees as defendants. The complaint generally averred that, during the course and scope of his employment, Kirby drove his police cruiser at high speed through a red light, striking Howard Byrd's vehicle. The first three causes of action assert that due to Kirby's "negligent, willful or wanton conduct," Howard, Garnet, and Heather Byrd suffered personal injuries, and Howard Byrd suffered the destruction of his automobile. The fourth cause of action is a wrongful death action under R.C. 2125.01, asserting that Kirby's "negligent, willful or wanton" conduct was the proximate cause of the death of Garnet Byrd. The fifth cause of action is a loss of consortium claim asserting that as a proximate result of the "wanton and willful conduct" (omitting the term "negligent") of Kirby, Howard Byrd and Heather Byrd have sustained the loss of support, services, society, and companionship of Garnet Byrd. The sixth and seventh causes of action assert that Kirby and the City of Columbus engaged in malicious prosecution of Howard Byrd by instituting a groundless charge of vehicular homicide against him after the death of Garnet Byrd.
 {¶ 5} Kirby and the city moved for summary judgment on a variety of grounds. The trial court found that Kirby was entitled to personal immunity under R.C. 2744.03(A)(6)(b) because appellants had presented no evidence to controvert appellees' evidence establishing that his actions were not wanton or reckless. The court then found that the city was not liable because under R.C. 2744.02(B)(1)(a), a political subdivision is not liable for injuries caused by a police officer responding to an emergency call unless the actions of the officer constitute willful or wanton misconduct. The court accordingly held that appellees were entitled to summary judgment on the wrongful death, loss of consortium, and personal injury claims.
 {¶ 6} The trial court also granted summary judgment for appellees on Howard Byrd's claim for malicious prosecution. The court found that appellants had failed to present evidence preserving a genuine issue of material fact on one of the elements of this tort, because Howard Byrd eventually pled no contest to a charge of failure to yield to a public safety vehicle in exchange for dismissal of the charge of negligent vehicular homicide. Because the criminal proceedings were not terminated in Howard Byrd's favor, the court found that an action for malicious criminal prosecution could not be maintained.
 {¶ 7} Finally, the trial court granted summary judgment for appellees on any negligence claims asserted by appellants, finding that appellants had not stated any claim for negligence in their complaint, limiting their actions to those requiring a finding of wanton or willful conduct on the part of Kirby.
 {¶ 8} Appellants have timely appealed bringing the following assignments of error:
I. The Trial Court Erred In Dismissing Or Granting Summary Judgment In Defendant's Favor As To Plaintiffs' Negligence Claims Against Defendant City of Columbus.
II. The Trial Court Erred In Granting Defendants' Motion For Summary Judgment As To The Willful, Wanton Or Reckless Conduct Claims Of Courts One, Two, Three, Four and Five of Plaintiff's Complaint Because Genuine Issues Of Material Fact Existed.
III. The Trial Court Erred In Holding That Defendants Were Entitled to Summary Judgment As A Matter of Law On Grounds That Defendant Officer Kirby Did Not Act In A Wanton Manner.
IV. The Trial Court Erred In Sustaining Defendants' Motion For Summary Judgment As To Plaintiffs' Malicious Prosecution And Abuse Of Process Claims.
 {¶ 9} We initially note that this matter was decided in the trial court by summary judgment, which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
 {¶ 10} An appellate court's review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588;Bard v. Society Nat. Bank, nka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the essential grounds raised by the movant, even if the trial court failed to consider those grounds. Bard.
 {¶ 11} We will begin, before addressing appellants' assignments of error, by summarizing the evidentiary materials presented in support of and in opposition to summary judgment. The deposition of Kirby, and that of his partner on the date of the accident, Officer Terry Carter, set forth that on November 23, 1996, they were working routine patrol parked in a store lot when they received an "officer in trouble" call over the radio. Kirby, who was driving, immediately activated his cruiser's lights and sirens, pulled out of the store lot, and drove south on Brice Road. The weather was clear and the roadway was dry. There was no other southbound traffic on Brice Road. As the cruiser approached the intersection of Brice Road and Chantry Drive, the light was red for the cruiser and Kirby slowed to make sure that conflicting traffic had stopped and yielded to his emergency lights and siren. As the cruiser entered the intersection, Kirby estimated his speed at 40 miles per hour. A vehicle suddenly appeared traveling westbound across his path, and although Kirby braked hard, he was unable to avoid striking the vehicle on the passenger side door.
 {¶ 12} Howard Byrd's deposition testimony stated that just before the collision, he was the first vehicle stopped at a light controlling a shopping center exit on the east side of Brice Road, which corresponded with the T-intersection of Chantry Drive and Brice Road on the west side. Garnet Byrd was in the front passenger seat and their adult daughter Heather Byrd was on the right-hand side in the rear passenger seat; that is, on the side where the impact occurred. As his light turned green, he checked traffic in both directions, had a clear view north of southbound traffic on Brice Road, and saw no vehicles or emergency flashing lights, and heard no siren. His first awareness of the police cruiser was at the moment of impact.
 {¶ 13} Heather Byrd's testimony substantially corroborated that of her father. She also stated that she was unaware of any approaching vehicle until the moment of impact.
 {¶ 14} Two independent witnesses, Matthew Glanzman and his wife Heidi Glanzman, gave accounts of the accident. They stated that they were eastbound on Chantry Drive preparing to turn right onto southbound Brice Road when they saw emergency lights and heard a siren at least 300 yards from the intersection. They stopped to allow the emergency vehicle through the intersection. They saw the Byrd vehicle make a left turn off of northbound Brice Road onto westbound Chantry in front of the police cruiser, which struck the Byrd vehicle on the passenger side.
 {¶ 15} An accident investigation by the Division of Police found that the cruiser was probably traveling between 43 and 46 miles per hour at the time of impact, and that there was reason to believe that Howard Byrd's vehicle was exiting the shopping center as he described, rather than making a left turn from northbound Brice Road as stated in the independent witnesses' account.
 {¶ 16} Due to the conflicting evidence over the direction of the approach of Howard Byrd's car to the intersection, appellees have stipulated for purposes of summary judgment that the Byrds were exiting the shopping center on the east side of the intersection and proceeding straight through the intersection to westbound Chantry Road, rather than making a left-hand turn from northbound Brice Road onto westbound Chantry Road.
 {¶ 17} After the accident, the investigating police officer issued a traffic citation to Howard Byrd for failure to yield to a public safety vehicle. A detective from the Division of Police accident scene investigation unit subsequently issued Howard Byrd a negligent vehicular homicide citation after his wife's death. In August 1997, Howard Byrd pled no contest in Franklin County Municipal Court to a charge of failure to yield, and the vehicular homicide charge was dismissed.
 {¶ 18} For convenience of analysis, we will address appellants' assignments of error out of numerical order. Appellants' second and third assignments of error assert that the trial court erred in finding that there remained no genuine issue of material fact and that appellees were not liable on appellants' personal injury, loss of consortium, and wrongful death claims because Kirby's conduct was not wanton, reckless, or willful.
 {¶ 19} The parties agree that the liability of the City of Columbus in this case is governed by R.C. 2744.02, which provides:
(A)(1) * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
* * *
(B) Subject to sections 2744.03 and 2744.05 of the Revised Code a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct[.]
 {¶ 20} Kirby's personal liability is governed by the succeeding code section, R.C. 2744.03, which provides:
(A) In a civil action brought against * * * an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
(6) * * * [T]he employee is immune from liability unless one of the following applies:
(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment * * *;
(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]
 {¶ 21} Several factors are not contested in the present case: (1) The officers were responding to an emergency call; (2) they were within the scope of their duties in doing so; and (3) police services are a governmental function. Given these elements, under R.C. 2744.03, Kirby would be personally immune from liability on the wrongful death and personal injury claims unless he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (In practice, the appellants further limit their allegations to the wanton and reckless standard and do not allege malice or bad faith.) Because Kirby was undisputedly on an emergency call, the City of Columbus, pursuant to R.C. 2744.02(B)(1)(a), is not liable unless Officer Kirby's conduct was willful or wanton. We will first address the city's liability under this standard.
 {¶ 22} Willful conduct has been defined by the Supreme Court of Ohio as the intent, purpose, or design to injure. Gladon v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 312, 319. None of the evidence in the present case is sufficient to maintain any material issue of fact as to any alleged willfulness of Kirby's conduct under this standard.
 {¶ 23} A wanton act is an act done in reckless disregard of the rights of others, which reflects a reckless indifference on the consequences to the life, limb, health, reputation, or property of others. State v.Earlenbaugh (1985), 18 Ohio St.3d 19, 21. In that case, the Supreme Court of Ohio also defined wanton conduct as "a failure to exercise any care whatsoever toward those whom one owes a duty of care, under circumstances where there is a great probability that harm will result." Id. Wanton misconduct entails a disposition to perversity. Fabrey v. McDonaldVillage Police Dept. (1994), 70 Ohio St.3d 351, 356. Kirby's testimony was that he had his cruiser's lights and siren on, slowed to approximately 40 miles per hour in a 35 mile per hour zone as he approached the intersection, observed that all cross traffic was stopped, and entered the intersection against the red light. The testimony of the independent witnesses corroborated the fact that the cruiser's lights and siren were activated. Likewise, the post-accident investigation did not establish a materially greater speed on the part of the cruiser.
 {¶ 24} Appellants argue that the testimony of Howard Byrd and his daughter indicated that they did not hear the siren or see emergency lights prior to the collision, and that this raises a material issue of fact as to whether the emergency lights and siren were on. We find that this testimony is not sufficient to oppose, for purposes of summary judgment, the testimony of witnesses who affirmatively stated that the lights and siren were activated. Howard Byrd and Heather Byrd both testified that they never noticed the cruiser prior to the accident, and thus could not affirmatively rebut the evidence that the emergency lights and siren were activated.
 {¶ 25} Construing the evidence, therefore, most favorably in favor of the non-moving party, we have the officers' testimony that they approached the intersection at 40 miles an hour, substantially corroborated by an accident reconstructionist placing the speed of impact between 43 and 46 miles per hour, slowing slightly upon approaching the intersection with lights and siren activated, observing no cross traffic, and proceeding through the intersection. Examining comparable case law, this court has found that an officer who entered an intersection at a high rate of speed, driving left of center, and going through a red light without braking or hesitating, could nonetheless not be found to have acted in a wanton manner, because the cruiser's lights and siren were activated:
The officer's use of these safety precautions establishes that he did exercise some degree of care in operating his cruiser through the intersection in response to the emergency call. * * * [H]is exercise of some care precludes a finding of wanton misconduct, as a matter of law.
Neely v. Mifflin Twp., September 30, 1966, Franklin App. 96AP-282.
 {¶ 26} Even if Neely is taken to represent the outer edges of immunity under this standard, the facts in the present case are more favorable to the appellees. We therefore find that, even assuming Kirby approached the intersection in excess of the speed limit and went through a red light, the evidence that he exercised some degree of care in activating his lights and siren, looking for cross traffic, and slowing, establishes that Kirby did not act in a wanton manner as a matter of law, and the City of Columbus is immune from liability under R.C. 2744.02(D)(1)(a).
 {¶ 27} With respect to Kirby's personal liability, the question is whether the absence of willful or wanton misconduct as defined in R.C.2744.02, which we have concluded establishes the city's immunity in this case, also meets the standard for personal immunity under R.C.2744.03(A)(6)(b), which sets forth a slightly different standard of "wanton or reckless." "Recklessness" for purposes of this statute has been defined as a "perverse disregard of a known risk." Lipscomb v.Lewis (1993), 85 Ohio App.3d 97, 102. The standard clearly implies something more than simple carelessness. Poe v. Hamilton (1990),56 Ohio App.3d 137, 138. Otherwise stated, reckless conduct has been defined as an act done with knowledge or reason to know facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm; this risk is of a greater degree than that necessary to make the conduct negligent. Piro v. Franklin Twp.
(1995), 102 Ohio App.3d 130, 139.
 {¶ 28} Reviewing, in the light most favorable to appellants, the entirety of the evidence that was before the trial court in support of and in opposition to summary judgment, we find that the trial court did not err in concluding that there did not remain a genuine issue of material fact on the question of whether Kirby's conduct rose to the level of recklessness, rather than mere negligence. Police runs in response to emergencies inevitably entail some degree of risk both to the responding officer and affected traffic. Nonetheless, Ohio law provides that vehicles on such emergency runs may, with lights activated and with due regard for the safety of others, exceed the posted speed limit (R.C.4511.24) and proceed through red lights or stop signals (R.C. 4511.03). Because the law and current police and emergency practice clearly contemplate the necessity in some circumstances of such emergency runs, a responding officer does not create an "unreasonable" risk of harm by engaging in an emergency run merely because such a response creates a greater risk than would be incurred by traveling at normal speed and in compliance with opposing traffic signals. The question of unreasonable risks must be weighed in terms of what is acceptable in the context of an emergency run, not ordinary driving conditions; an officer responding at ten miles over the posted speed limit with lights flashing, siren on, and slowing as he approaches an intersection does not create the same risk as one traveling 100 miles per hour at night on unfamiliar roads while pursuing in violation of departmental policy, as was the case in Wagnerv. Heavlin (2000), 136 Ohio App.3d 719, a case cited by appellants. Even construing the evidence most strongly in favor of appellants in the present case, the circumstances leading to the collision causing appellants' injuries do not demonstrate reckless conduct on the part of Kirby, and he was accordingly entitled to immunity under R.C.2744.03(A)(6)(b).
 {¶ 29} In accordance with the foregoing, we find that there remain no genuine issues of material fact under the applicable statutory standards for liability for either Kirby or the City of Columbus, and appellants' second and third assignments of error are overruled.
 {¶ 30} Appellants' first assignment of error asserts that the trial court erred in stating that appellants' complaint did not state any claim for negligence against the city or Kirby, and thus erred in finding that no such negligence claim would survive summary judgment. Appellants point to the repeated use of the term "negligence" in various aspects of their complaint, and assert that under notice pleading standards the claim is sufficiently stated to require a specific development of facts and law in support of summary judgment, rather than a flat assertion that no such claim had been raised. While we agree with appellants' premise that claims for negligence are raised in the complaint, we find that they were properly disposed of by summary judgment, although on grounds less succinctly stated than those provided by the trial court.
 {¶ 31} Briefly stated, all of the facts and circumstances developed by appellants in this case presume that the matter falls under R.C. 2744.02
and 2744.03. At no point is it alleged that the conduct giving rise to the accident occurred outside the scope of Kirby's employment, other than on an emergency run, or during the exercise of a non-governmental function. Both statutes provide for immunity for the consequences of merely negligent conduct under these circumstances. The evidence provided by appellees in support of summary judgment established circumstances showing that the action fell under these statutes, and the negligence aspect of the complaint therefore did not state a tenable claim. Summary judgment was properly granted, whether or not the complaint attempted to assert alternative claims for either simple negligence or wanton and willful conduct. Appellants' first assignment of error is accordingly overruled.
 {¶ 32} Appellants' fourth assignment of error asserts that the trial court erred in granting summary judgment for the City of Columbus on appellants' malicious prosecution and abuse of process claims. In order to state an action for malicious prosecution, a plaintiff must show (1) malice in instituting or maintaining the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused. Ash v. Ash (1995), 72 Ohio St.3d 520, 522. A proceeding is "terminated in favor of the accused" only when its final disposition indicates that the accused is innocent. Id. A prosecution terminated by reason of voluntary settlement or compromise with the accused is indicative of neither guilt nor innocence, and does not constitute a termination in favor of the accused. Id. "It would be unfair to a complaining witness to allow an accused to secure the dismissal of the criminal charges against him or her by consenting to a compromise and then take advantage of the termination by suing the complaining witness." Id. at 523.
 {¶ 33} Howard Byrd's claim for malicious prosecution is based upon alleged malice in instituting a charge against him of vehicular homicide after his wife's death. Howard Byrd subsequently entered into a plea agreement under which he pled no contest to a charge of failing to yield to an emergency vehicle. He cannot now, therefore, assert that the prosecution was resolved in his favor, and, therefore, does not meet the three elements under Ash for an action for malicious prosecution. The trial court properly granted summary judgment for the City of Columbus on this claim, and appellants' fourth assignment of error is overruled.
 {¶ 34} In summary, appellants' first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment for defendants on all claims is affirmed.
Judgment affirmed.
Petree and French, JJ., concur.