[Cite as *Adams v. Ward*, 2010-Ohio-4851.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

KAREN ADAMS,                               )
                                           )   CASE NO.    09 MA 25
         PLAINTIFF-APPELLANT,              )
                                           )
         - VS -                            )   O P I N I O N
                                           )
WILLIAM WARD, et al.,                      )
                                           )
         DEFENDANTS-APPELLEES.             )


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 07CV3509.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellant:         Attorney Michael Harlan
                                 6630 Seville Drive
                                 Canfield, Ohio  44406


For Defendants-Appellees:        Attorney Neil Schor
                                 26 Market Street, Suite 1200
                                 P.O. Box 6077
                                 Youngstown, Ohio  44501-6077


JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                 Dated:  September 27, 2010

VUKOVICH, P.J.

¶{1}  Plaintiff-appellant Karen Adams appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees Officer William Ward and City of Youngstown that found that both defendants were immune from liability under R.C. Chapter 2744.  Adams raises two issues in this appeal.  The first is whether Officer Ward's actions in pursuing a suspected felon during a vehicle pursuit rose to the level of willful, wanton or reckless misconduct.  Specifically, was Officer Ward's conduct in driving his police cruiser with its lights and sirens activated through a red light that resulted in a vehicular accident with Adams willful, wanton or reckless?  The second issue is whether Youngstown adequately trained Officer Ward on its pursuit policy.  For the reasons expressed below, the judgment of the trial court granting summary judgment in favor of Youngstown and Officer Ward is hereby affirmed.

STATEMENT OF CASE

¶{2}  On the afternoon of February 6, 2005, which was a clear dry day, Officer Ward of the Youngstown Police Department was leading a car chase of a suspected felon in Youngstown, Ohio.  Ward Affidavit ¶4-8.  Officer Ward was traveling westbound on McGuffey Road approaching the intersection of Lansdowne Boulevard with his lights and sirens activated and he was traveling at approximately 45 mph, which was above the posted speed limit.  Mercer Affidavit ¶12 (Sergeant monitoring the pursuit).  The traffic light at the intersection of McGuffey Road and Lansdowne Boulevard was red in Officer Ward's and the suspect's direction.  Neither the suspect nor Officer Ward stopped for the red light.  However, Officer Ward slowed down to around 40 mph.  Ward Affidavit ¶13.  He asserted that he checked to make sure there was no cross traffic approaching prior to running the red light.  Ward Affidavit ¶15.  He indicated that he did not see anything that warranted coming to an abrupt stop and also observed that vehicles were stopped near the intersection.  Ward Depo. 23; Ward Affidavit ¶14, 16.  Officer Ward was partially through the intersection when Adams' car, traveling northbound on Lansdowne Boulevard, collided with his cruiser.  Adams and Officer Ward each sustained injuries from the collision.

¶{3} As a result of the accident, Adams filed a complaint against Officer Ward and Youngstown.[1] The claims asserted against Youngstown are: 1) that Ward, acting as an agent of Youngstown, was willful or wanton in operating the cruiser and caused the collision with Adams that resulted in her injury; 2) that Youngstown was negligent in failing to have pursuit policy and/or failing to train Ward on that pursuit policy, and 3) that Youngstown negligently and/or willfully entrusted the police vehicle to Ward. The individual claim against Ward was that in operating the vehicle during the pursuit he acted in a wanton or reckless manner, and thus, proximately caused Adams' injuries.

¶{4} Both Ward and Youngstown answered the complaint and asserted immunity under R.C. Chapter 2744 as a defense. Following that answer, Ward and Youngstown filed a joint motion for summary judgment based upon the immunity defenses in R.C. 2744.02(B)(1)(a) (for Youngstown) and R.C. 2744.03(A)(6)(b) (for Ward). Thereafter, Adams filed a motion in opposition to summary judgment and Ward and Youngstown responded to that motion.

¶{5} Following the responses, the trial court granted Ward and Youngstown's motion for summary judgment. It found that while Ward may have "acted somewhat negligently" in pursuing the suspected felon, his conduct did not rise to the level of wanton, willful or reckless conduct. 01/08/09 J.E.

¶{6} This timely appealed followed.

<u>ASSIGNMENT OF ERROR</u>

¶{7} "THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT."

¶{8} This appeal involves a challenge to summary judgment. An appellate court reviews summary judgment under a de novo standard, using the same standards as the trial court. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, at ¶24. Civ.R. 56(C) provides that summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66. Thus, in order to survive summary judgment,

---

[1]Adams also sued others, however, those defendants are not involved in this appeal.

Adams has to show this court that, when viewing the evidence in the light most favorable to her, there is a genuine issue of material fact as to whether Youngstown and Ward are immune from liability under R.C. Chapter 2744.

¶{9} However, prior to addressing the law of immunity under R.C. Chapter 2744, two procedural issues must be addressed. The first issue concerns Adams' motion in opposition to summary judgment. Ward and Youngstown bring to this court's attention that the motion in opposition to summary judgment is not listed in the clerk's docket and is not part of the record before this court. Their assertion is correct. The motion in opposition was incorrectly filed in the 2005 case number that Adams originally filed against Ward and Youngstown. That case was voluntarily dismissed pursuant to Civ.R. 41(A) without prejudice. Adams refilled the complaint in the underlying case number in September 2007.

¶{10} Although the motion in opposition was not filed in the correct case number, we will still consider it as part of the record. We do so primarily because Youngstown and Ward admitted to receiving the motion in opposition and filed a response to it. Furthermore, we have been able to obtain the motion in opposition from the 2005 file of the dismissed case. Consequently, we will not ignore the motion solely because it was filed in the wrong case number.

¶{11} The second issue is whether some of the evidence used to support Adams' motion in opposition to summary judgment was proper. In their appellate brief, the officer and the City argue that Adams' reliance on Channel 33's video of the accident, the Arbitrator's Opinion (which was the Opinion from Ward's appeal of the administrative discipline he received for the incident involved) and the portion of Youngstown's Pursuit Policy that was cited in the Arbitrator's Opinion was improper evidence under Civ.R. 56(C).

¶{12} Civ.R. 56(C) provides an exclusive list of materials a trial court may consider when deciding a motion for summary judgment: affidavits, depositions, answers to interrogatories, written admissions, transcripts of evidence in the pending case, and written stipulations. *Aegis v. Sedlacko*, 7th Dist. No. 07MA128, 2008-Ohio-3190, ¶22, citing *Drawl v. Cornicelli* (1997), 124 Ohio App.3d 562, 569. See, also, *Spier v. American Univ. of the Caribbean* (1981), 3 Ohio App 3d 28. No other evidence may be considered unless it is introduced as "evidentiary material only

through incorporation by reference in a properly framed affidavit." *Martin v. Cent. Ohio Trans. Auth.* (1990), 70 Ohio App.3d 83, 89. See, also, Civ.R. 56(C).

¶{13} Channel 33's video of the accident clearly does not fall within the range of evidence permitted under Civ.R. 56(C); it is not an affidavit, deposition (nor was it introduced and admitted during either Ward's or Adam's depositions), answer to interrogatory, written admissions, transcript of evidence or written stipulation. Thus, the only means to have it rendered proper summary judgment evidence was to incorporate it through a properly framed affidavit. It was not accompanied by a properly framed affidavit. Thus, it will not be considered.

¶{14} As to the Arbitrator's Opinion, which includes a citation to Youngstown's pursuit policy, there is support for the proposition that when the arbitrator's opinion is not properly verified pursuant to Civ.R. 56(C) and (E) then it is not proper evidence and may not be considered when determining whether to grant summary. See *May v. Brainard Rivet Co.* (Sept. 16, 1988), 11th Dist. No. 3918 (indicating that the arbitrator's opinion was not properly verified and, as such, was an inadmissible document for purposes of Civ.R. 56). Consequently, considering the clear language of Civ.R. 56 and supporting case law, the Arbitrator's Opinion, which includes a citation to Youngstown's pursuit policy, is improper summary judgment evidence without incorporation through an affidavit or being admitted as evidence during a deposition. Thus, it will not be considered.[2]

¶{15} That said, as to the pursuit policy, Officer Ward did discuss it during his deposition and in his affidavit. In the deposition, he stated that Youngstown's pursuit policy does not permit an officer to race through an intersection, but requires the officer to slow to 25 mph in going through the intersection. Ward Depo. 72-73. Adams' argument concerning the pursuit policy is that Officer Ward did not follow it because he

---

[2]The opinion of one of our panel members takes the position that the Arbitrator's opinion should be considered because it was attached to Ward and Youngstown's Reply to the Motion in Opposition to Summary Judgment. That opinion concludes that by attaching it and referencing it, Ward and Youngstown invited the error. However, that reasoning fails to acknowledge that in footnote one of that motion, Ward and Youngstown stated:

"Defendants have provided the court with a copy of the Arbitrator's opinion for the sole purpose of the court's convenience in reviewing reference to this opinion. Notwithstanding its inclusion with defendants' reply, defendants contend it must be stricken from Rule 56 consideration."

That statement indicates it was not invited error and thus, to hold Ward and Youngstown's choice to attach the Arbitrator's opinion to the motion is not fair. Furthermore, although the trial court did not issue a ruling striking the Arbitrator's opinion, nothing in the record suggests that it was considered by the trial court when determining summary judgment.

did not slow to 25 mph in going through the intersection. Her position is that the failure to abide by the pursuit policy creates a genuine issue of material fact precluding summary judgment. To the extent that Officer Ward discussed the pursuit policy in his affidavit and the deposition, we will consider those statements in determining whether summary judgment was properly granted.

¶{16} Having resolved the procedural matters, we now move to the merits of the summary judgment award. As stated above, the issue is whether when viewing the evidence in the light most favorable to Adams, there is a genuine issue of material fact as to whether Youngstown and Ward are immune from liability under R.C. Chapter 2744. Specifically, Adams makes two distinct arguments. The first is whether Ward's conduct in driving was reckless, willful or wanton and, thus deprived Youngstown and Ward of immunity. The second issue deals with Youngstown's failure to have a pursuit policy and/or in failing to train Ward of that policy. We will begin with the first issue concerning Ward's driving and if his conduct removed Youngstown and his immunity.

A. Immunity and Officer Ward's Driving

¶{17} The Ohio Supreme Court has explained that the determination of whether a political subdivision, in this instance Youngstown, is immune from tort liability under R.C. Chapter 2744 involves a three-tiered analysis. *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, ¶7. It explained:

¶{18} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. Id. at 556-557; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28.

¶{19} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. Id. at 28. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

¶{20} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." Id. at ¶7-9.

¶{21} Using the three tiers, we start with the fact that Youngstown, as a political subdivision, is immune from liability. Thus, we move to the second tier – whether an exception to immunity under R.C. 2744.02(B) applies and, if so, do any of the complete defenses listed in the section also apply. Given the facts at hand and both parties' admission that Ward was acting within the scope of his employment at the time of the accident, R.C. 2744.02(B)(1) is the only exception that could apply.

¶{22} R.C. 2744.02(B)(1) provides three defenses to liability. Adams concedes that the only possible defense given the facts of this case is in subsection (a). That subsection reads:

¶{23} "(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." R.C. 2744.02(B)(1)(a).

¶{24} Adams concedes that Ward was responding to an "emergency call." That concession is correct. R.C. 2744.01(A); *Colbert*, 99 Ohio St.3d 215, 2003-Ohio-3319 at ¶11, 15. Consequently, as to Youngstown's liability, the only issue before this court under R.C. 2744.02(B)(1)(a) is whether there is a genuine issue of material fact as to whether Ward's operation of the vehicle constituted willful or wanton misconduct.

¶{25} At this point we note that while the above discussion is about immunity and defenses as applied to Youngstown, a similar standard is suitable in determining whether immunity applies to Ward in his individual capacity. R.C. 2744.03(A)(6)(b) states that an employee acting within the scope of his employment is immune from liability unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." We have previously stated that for purposes of immunity, "wanton or reckless" misconduct under R.C. 2744.03(A)(6) is the functional equivalent of "willful or wanton misconduct" under R.C. 2744.02(B)(1)(a). *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 731, quoting *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 514-516 (dealing with R.C. 2744.02(B)(1)(b) with firefighter's liability). Consequently, if Ward's conduct does not rise to the level of wanton or reckless misconduct under R.C. 2744.03(A)(6), that same conduct will not rise to the level of willful or wanton misconduct under R.C. 2744.02(B)(1)(b).

¶{26} It has previously been explained that wanton, willful and/or reckless conduct is conduct that is a degree greater than negligence. *Rankin v. Cuyahoga Cty.*

*Dept. of Children and Family Servs.,* 118 Ohio St.3d 392, 2008-Ohio-2567, ¶37; *Wagner*, 136 Ohio App.3d at 730-731. Specifically wanton misconduct is the "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Wagner*, 136 Ohio App.3d at 730-731. Willful conduct involves a more positive mental state than wanton misconduct and implies intent. Id. at 731. That intention relates to the conduct, not the result. Id. It is an intentional deviation from a clear duty or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. Reckless conduct is conduct that was committed knowing the facts or having reason to know the facts and leads a reasonable person to know that his conduct will in all probability result in injury. *Rankin,* 118 Ohio St.3d 392, 2008-Ohio-2567, ¶37 (dealing with R.C. 2744.03(A)(6)(b)).

¶{27} Typically issues regarding recklessness, wantonness or willfulness are questions for the jury to decide, however, the standard for showing such conduct is high. *Cunningham*, 9th Dist. No. 22818, 2006-Ohio-519, at ¶24. Thus, when the facts presented show that reasonable minds could not conclude that the conduct at issue meets that high standard, a court may determine that such conduct is not willful, wanton or reckless as a matter of law and such determination is made considering the totality of the circumstances. *Ybarra v. Vidra II*, 6th Dist. No. WD-04-061, 2005-Ohio-2497, ¶10, citing *Reynolds v. City of Oakwood* (1987), 38 Ohio App.3d 125, 127.

¶{28} As such, our review turns to whether reasonable minds could conclude that Ward's conduct rose to the level of willful, wanton or reckless misconduct. Both parties cite this court to multiple cases that each believe to be analogous to the facts at hand. *Natale v. City of Rocky River*, 8th Dist. No. 90819, 2008-Ohio-5868 (finding immunity applied); *Cunningham v. City of Akron*, 9th Dist. No. 22818, 2006-Ohio-519 (finding immunity applied); *Ybarra*, 6th Dist. No. WD-04061, 2005-Ohio-2497 (finding immunity applied); *Byrd v. Kirby*, 10th Dist. No. 01AP-451, 2005-Ohio-1261 (finding immunity applied); *Cader v. Kettering*, 2d Dist. No. 20219, 2004-Ohio-4260 (finding a genuine issue of material fact); *Hunter v. City of Columbus* (2000), 139 Ohio App.3d 962 (finding a genuine issue of material fact); *Wagner*, 136 Ohio App.3d 719 (finding a genuine issue of material fact); *Peoples v. Willoughby* (1990), 70 Ohio App.3d 848 (finding a genuine issue of material fact); *Reynolds*, 38 Ohio App.3d 125 (finding a

genuine issue of material fact). In reviewing all of these cases, it is clear that the determination of whether the officer acted in a wanton, willful and/or reckless manner in his pursuit is highly dependent on the facts of each case. These cases considered factors such as the speed limit of the road, the speed the officer was traveling, whether the officer was traveling in the wrong lane; the time of day, the weather, the officer's familiarity with the road, whether there was a safer alternative than continuing the pursuit; whether the officer admitted to disregarding the consequences of his actions, whether the officer's lights and sirens were activated, and whether the political subdivision had a pursuit policy and was that policy followed.

¶{29} The facts in the case sub judice are that at approximately 3:00 p.m. on February 6, 2005, a clear dry day, Ward had his lights and siren activated while pursuing the felon on McGuffey Road. Mercer Affidavit ¶9; Gaitanis Affidavit ¶5; Ward Affidavit ¶5-6, 11; Ward Depo. 9. The speed limit of the McGuffey Road is 35 mph. Ward Depo. 20. He was pursuing the felon at a speed of about 45 mph and when going through the McGuffey Road and Lansdowne Boulevard intersection, which he admitted familiarity with, he was traveling at approximately 40 mph. Ward Depo. 18-20, 95, 98; Ward Affidavit ¶9, 13, 14, 19; Gaitanis Affidavit ¶11. There were some stopped cars on McGuffey Road near the intersection. Ward Depo. 23; Ward Affidavit ¶14; Gaitanis Affidavit ¶14. He tried looking both ways prior to entering the intersection to ensure that no traffic was coming. Ward Affidavit ¶15; Ward Depo. ¶99. However, from his direction, traveling westbound on McGuffey Road, his vision was a little limited as to the traffic traveling northbound on Lansdowne Boulevard; McGuffey Road prior to the intersection was curved and had an elevation. Ward Depo. 19, 22, 95, 99; Ward Affidavit ¶17. In going through the intersection, Ward did not go left of center, but rather straddled his lane and the turning lane. Ward Depo. 66-67. As he proceeded through the intersection, he and Adams, who was traveling northbound on Lansdowne Boulevard, collided. Gaitanis Affidavit ¶16; Ward Affidavit ¶18. In addition to indicating how the accident occurred, Ward acknowledged that Youngstown has a pursuit policy and that he believed that he acted in conformity with that policy even though he did not slow down through the intersection to the policy's 25 mph requirement. Ward Affidavit ¶23-25; Ward Depo. 72.

¶{30} Adams indicated that she was traveling with her windows down and her radio on low, however, she did not recall hearing lights or sirens or seeing any vehicles

stopped in her direction. Adams Depo. 31-33, 39. She stated that a person traveling northbound, the direction she was traveling, on Lansdowne Boulevard could barely see if any traffic was approaching on McGuffey Road until that vehicle was in the intersection of Lansdowne Boulevard and McGuffey Road. Adams Depo. 30.

¶{31} In addition to these facts, it can be determined from the record that there was not a safer alternative available to Ward. While he knew the license number of the vehicle he was pursuing, nothing in the record suggests that he knew who the suspect was. Just because the officer has a license plate number and could find the identity of the owner of the car does not mean that the officer can determine the identity of the driver of the vehicle. Likewise, Ward did not admit to disregarding the consequences, rather he weighed all possible risks.

¶{32} "At that point, and, again, if you're asking me would I have waited, if it was a decision, do I absolutely have to catch him versus proceed through the intersection, it's a felony, felony acts, and, yes, our objective as a police force is to capture him and take him into custody.

¶{33} "But if you're asking me, was I weighing the importance of capturing him at the intersection of Landsdowne [sic] and McGuffey versus the importance of maintaining not only control of my vehicle but a close enough relationship between the suspect and myself so that he's marked and the rest of the motoring public is going to be aware that this is a police pursuit so that they're not going to be blind-sided by this car, the latter of the two was my intention at that point in the road.

¶{34} "* * *

¶{35} "I – just if you're asking me, did I chuck caution out the window because I was emphatic that, had [sic] to catch him right now, no. His behavior is – that and of itself is something that we could talk about for days. But let's just say that my perception is that it appeared that my superiors felt that he was a significant risk to the public safety just by being there that we had to make an attempt at apprehending and containing him." Ward Depo. 85-86.

¶{36} Thus, considering all the undisputed facts viewed in the light most favorable to Adams, we find that the facts of this case indicate that the officer's driving

was not wanton, willful or reckless.[3] In support of this decision, we note that the facts of this case are in line with cases from our sister districts that have found immunity applies as a matter of law. One such case is the Tenth Appellate District's *Byrd* case where the court affirmed the trial court's finding that immunity applied to both the city and the officer. In that case, the weather was clear and the roads were dry, the officer had his sirens and lights activated, he slowed through the intersection trying to make sure that conflicting traffic had stopped and yielded to his emergency lights and sirens. Considering those facts, the *Byrd* court pointedly explained:

**¶{37}** "Police runs in response to emergencies inevitably entail some degree of risk both to the responding officer and affected traffic. * * * Because the law and current police and emergency practice clearly contemplate the necessity in some circumstances of such emergency runs, a responding officer does not create an 'unreasonable' risk of harm by engaging in an emergency run merely because such a response creates a greater risk than would be incurred by traveling at normal speed and in compliance with opposing traffic signals. The question of unreasonable risks must be weighed in terms of what is acceptable in the context of an emergency run, not ordinary driving conditions; an officer responding at ten miles over the posted speed limit with lights flashing, siren on, and slowing as he approaches an intersection does not create the same risk as one traveling 100 miles per hour at night on unfamiliar roads while pursuing in violation of departmental policy, as was the case in *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, a case cited by appellants." *Byrd*, 10th Dist. No. 04AP-451, 2005-Ohio-1261 at ¶28.

**¶{38}** The only difference between our case and the *Byrd* case is that there was no discussion of a pursuit policy or diminished visibility in *Byrd*. Here, as earlier discussed, Ward stated that Youngstown has a pursuit policy and that he believed that he followed that policy. During his deposition he admitted that Youngstown's pursuit policy states that the officer cannot race through an intersection, that he has to slow to 25 mph when going through the intersection. Ward Depo. 72.

---

[3]It is noted that many appellate courts have held that when considering the totality of the circumstances, the use of lights and a siren is a significant factor to be considered, but liability should not be denied solely because the officer's lights and sirens were activated. *Reynolds*, 38 Ohio App.3d at 127. See, also, *Robertson v. Roberts*, 11th Dist. No. 2003-T-0125, 2004-Ohio-7231, ¶22; *Peoples*, 70 Ohio App.3d at 852; *Herd v. City of Shaker Heights* (May 17, 1990), 8th Dist. No. 57001; *Hunter*, 139 Ohio App.3d at 970.

¶{39} The undisputed facts of this case indicate that while Ward did not slow to 25 mph, he did attempt to assure that he had clear passage through the intersection by using his lights and sirens and slowing. Admittedly, one appellate court has found that violation of a pursuit policy indicating that an operator should not drive over 20 mph when in the wrong lane, along with other facts, creates a genuine issue of material fact. *Hunter*, 139 Ohio App.3d at 968. The other facts that the court considered were that the operator was traveling 26 mph over the speed limit, driving in the wrong lane and the court assumed since the accident occurred on a winter day the driver would have had a hard time hearing the sirens when the windows were up and the radio was on. Those three factors render the *Hunter* case distinguishable from the case at hand.

¶{40} Consequently, even though Officer Ward did not strictly comply with the pursuit policy and even though there was an undisputed element of diminished visibility, he did not take an unreasonable risk in his pursuit of the felon. Ward was traveling at most 10 mph over the speed limit, his lights and sirens were activated, he was familiar with the road, he slowed through the intersection, he attempted to assure that he had clear passage, it was during the daylight hours of a clear, dry day and Adams windows were admittedly open providing a greater ability to hear Ward's sirens. Immunity applies as a matter of law.

## B. Youngstown's Training of Officer Ward

¶{41} We will now turn to the final issue, Youngstown's training of Ward.

¶{42} The opinion of one of our panel members takes the position that the trial court did not issue a ruling granting summary judgment to Youngstown on Adam's claims for willful, wanton, or reckless entrustment of a vehicle and for failure/inadequate training. While it is true that the trial court did not expressly rule on these claims, the trial court's ruling that Adams' claims were barred by sovereign immunity encompasses those claims. In other words, once the trial court found that R.C. 2744.02(B)(1)(a) provided a complete defense for Youngstown, that ruling also went to the failure to train and entrustment claims.

¶{43} As explained above, the general rule is a political subdivision is immune from liability. There are five exceptions to immunity under R.C. 2744.02(B). The only applicable exception is R.C. 2744.02(B)(1), which provides that a political subdivision is liable for its employee's negligent operation of a motor vehicle. This would include

failure to train and entrustment claims. *Wagner*, 136 Ohio App.3d at 734-735 (discussing failure to train claims); *Gould v. Britton* (Jan. 30, 1992), 8th Dist. No. 59791 (discussing negligent entrustment claims). However, R.C. 2744.02(B)(1)(a)-(c) provides "full" defenses for possible liability under R.C. 2744.02(B)(1).

**¶{44}** The trial court clearly found that R.C. 2744.02(B)(2)(a) provided a complete defense because Ward's operation of the vehicle did not amount to willful, wanton or reckless conduct. As provided above, we are affirming that decision because Ward's conduct did not rise to that level. Accordingly, a complete defense to any possible liability under R.C. 2744.02(B)(1) means that the entrustment and failure to train claims would also be barred by political subdivision immunity. See *Gould*, 8th Dist. No. 59791. Consequently, even though the trial court did not expressly rule on the remaining claims before it, its ruling and our decision to affirm that ruling clearly indicates that the other claims are barred by sovereign immunity.[4]

**¶{45}** Furthermore, it is noted that Adams does not argue to this court that the trial court's decision is not a decision on the negligent/willful/wanton entrustment claim or the failure to train claim. In fact, the only argument Adams asserts in her appeal regarding these claims is that there is a genuine issue of fact regarding whether Youngstown was negligent in failing to properly train Ward in pursuit driving and/or for failing to have a pursuit policy. Even if R.C. 2744.02(B)(1)(a) did not provide a complete defense to this claim, her argument still fail.

**¶{46}** In support of her argument that Ward was not trained or inadequately trained, Adams cites to R.C. 2935.031. This section provides:

**¶{47}** "Any agency, instrumentality, or political subdivision of the state that employs a sheriff, deputy sheriff, constable, marshal, deputy marshal, police officer, member of a metropolitan housing authority police force, state university law enforcement officer, or veterans' home police officer with arrest authority under section 2935.03 of the Revised Code or that employs other persons with arrest authority under the Revised Code, shall adopt a policy for the pursuit in a motor vehicle of any person who violates a law of this state or an ordinance of a municipal corporation. The chief law enforcement officer or other chief official of the agency, instrumentality, or political

---

[4]Even if the matter was remanded to the trial court for a decision on the entrustment and failure to train claims, by the trial court's prior decision that R.C. 2744.02(B)(1)(a) was a complete defense to liability and our affirmance of that decision, the trial court would be bound to find that Youngstown was immune and summary judgment is proper on those claims.

subdivision shall formally advise each peace officer or other person with arrest authority it employs of the pursuit policy adopted by that agency, instrumentality, or political subdivision pursuant to this section."

¶{48} A similar argument was made in *Wagner*. There we held that R.C. 2935.031 cannot be used as an independent basis of imposing liability. *Wagner*, 136 Ohio App.3d at 737. In *Wagner*, we stated that there was persuasive evidence that a pursuit policy could have prevented the accident. We held as such because the officer stated in his deposition that he did not believe that he would have done anything differently "unless there was more training and policy set down." Id.

¶{49} Here, Youngstown contends that there is a pursuit policy and Ward testified to such in his deposition. Ward Depo. 9. At his deposition, Ward indicated that he had a clear understanding of the pursuit policy and showed that he was trained on that policy.

¶{50} "Q. According to the pursuit policy, it is specific that you can't recklessly disregard traffic signals; is that fair to say?

¶{51} "A. Yes, ma'am.

¶{52} "Q. And it specifies that you can't simply race through an intersection; is that correct?

¶{53} "A. Yes, ma'am.

¶{54} "Q. In fact, you have to slow down to 25 miles an hour to go through the intersection, according to the policy?

¶{55} "A. Yes, ma'am.

¶{56} "Q. And this is basically so that you or somebody else doesn't get hurt; is that correct?

¶{57} "A. Yes, ma'am.

¶{58} "Q. Now, one of the considerations that went into the policy is that – basically that when you're in a high pursuit, not only do you have to consider your safety, but the safety of everybody else that's driving around you; correct?

¶{59} "A. Yes, ma'am.

¶{60} "Q. And you also consider the seriousness of the offense; is that right?

¶{61} "A. Yes, ma'am.

¶{62} "Q. And the offense would be of the person you're chasing?

¶{63} "A. Correct." Ward Depo. 11-12.

¶{64} Adams does not provide any evidence that Ward's knowledge of the pursuit policy was incorrect or incomplete. Furthermore, Adams does not provide any evidence that if his knowledge of the policy was incorrect or incomplete, how that knowledge would have stopped the accident. As such, even if R.C. 2744.02(B)(1)(a) did not provide a complete defense to Adams' claim for failure to train, her argument still fails.

## CONCLUSION

¶{65} In conclusion, the trial court properly granted summary judgment for Ward and Youngstown. Both Youngstown and Ward are immune from liability; R.C. 2744.02(B)(1)(a) provides a complete defense to Adams' claims.

¶{66} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, J., concurs in part, dissents in part; see concurring in part, dissenting in part opinion.


DeGenaro, J., concurring in part and dissenting in part.

While I concur with the majority that the trial court properly held that Youngstown and Ward are immune from liability as to Adams' first claim, I respectfully dissent for two reasons. First, I disagree with the majority's resolution of procedural issues in this case: 1) considering a brief that is de hors the record; and 2) not considering the Arbitrator's Opinion, as it was put into evidence by Youngstown and Ward, which constitutes invited error and precludes Youngstown from arguing on appeal that we cannot consider the Arbitrator's Opinion as a part of the record on appeal. Second, I would remand this case on Adams' claims against Youngstown for failure to train/inadequate training and entrusting the vehicle to Ward, as it appears the trial court did not grant summary judgment on those two claims. Because the trial court's summary judgment entry granting Youngstown and Ward immunity is a final order, and contains the 'no just reason for delay' language, it is appealable at this time, even though, as I contend, Adams' other two claims against Youngstown remain pending. R.C. 2505.02, Civ.R. 54.

The majority's rationale does not support its decision to consider the arguments and evidentiary materials contained in Adams' brief in opposition to summary judgment

that was served upon Youngstown and Ward but not filed with the trial court. Although appellate review of summary judgments is de novo, "an appellate court must limit its review of a summary judgment to that which was on record before the trial court." *Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, at ¶18. Further, we cannot consider evidentiary material that was never presented to or otherwise viewed by the trial court. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500. This does not mean that the Arbitrator's Opinion is not in the record before us.

Youngstown and Ward attached a copy to their reply brief and used it in their arguments in support of summary judgment, while also arguing that it was not properly before the trial court and therefore could not be considered. However, it is proper to consider the Arbitrator's Opinion for two reasons.

First, there is no ruling in the trial court's summary judgment entry striking the Arbitrator's Opinion from the record. Any motion not ruled upon by the trial court is deemed denied. For example, in *Temple v. Fence One, Inc.*, 8th Dist. No. 85703, 2005-Ohio-6628, the defendants argued on appeal that exhibits attached to the plaintiff's briefs in opposition to the defendants' motions for summary judgment could not be considered because they do not comply with the requirements of Civ.R. 56(C). The Eighth District held that because the record did not reflect that the trial court ruled on the motions to strike, it presumed that the motions were denied. Id. at ¶26-27. As in *Temple*, Youngstown and Ward's motion to strike was not ruled upon by the trial court, so we must presume it was denied. Thus, the Arbitrator's Opinion is a part of the record.

Second, Youngstown and Ward cannot use the Arbitrator's Opinion to support summary judgment while arguing Adams could not use it to oppose summary judgment because it was not filed in accordance with Civ.R. 56. The Ninth District addressed a similar issue in *McDowell v. DeCarlo*, 9th Dist. No. 23376, 2007-Ohio-1262:

"This Court notes that appellant attached a partial transcript of her testimony from case number 2003-CV-2002 to her response in opposition to appellee's motion for summary judgment. Accordingly, appellant relied on the very evidence she now seeks to exclude from this Court's de novo review. This Court finds, therefore, that any error of which appellant now complains was invited error. Under the invited error

doctrine, a party is not 'permitted to take advantage of an error which he himself invited or induced the trial court to make.' *State v. Carswell*, 9th Dist. No. 23119, 2006-Ohio-5210, at ¶ 21, quoting *State ex rel. Bitter v. Missig* (1995), 72 Ohio St.3d 249, 254. Because appellant appended to her opposition the same evidence she now challenges, she cannot now complain about this error." Id. at ¶15.

As was the complaining party in *McDowell*, Youngstown and Ward are precluded from arguing against the use of the Arbitrator's Opinion because they used the evidentiary material they sought to exclude. The fact that, as the majority points out, Youngstown and Ward indicated in a footnote that they were providing the Arbitrator's Opinion for "the sole purpose of the court's convenience in reviewing reference to the opinion," does not change the outcome. In my view, Youngstown and Ward cannot have it both ways. They cannot argue against the inclusion of the Arbitrator's Opinion while simultaneously providing that opinion for the trial court's review. Because Youngstown and Ward attached a copy of the Arbitrator's Opinion to their reply brief in support of summary judgment, and there is no decision by the trial court striking it from the record, we can properly consider it as a part of the record.

Next, Adams' claims against Youngstown for failure to train/inadequate training and entrusting the vehicle to Ward are still pending, as the trial court did not address either claim in its summary judgment entry. The majority should not have addressed the merits of those claims because there was no judgment on those claims to review.

Youngstown and Ward correctly state at page three of their brief to this court: "The Trial Court's Judgment Entry does not specifically address the negligent/reckless entrustment claims or the failure to train/inadequate training claims asserted by Adams." In *Lamb v. Summit Mall* (Jan. 17, 2001), 9th Dist. No. 20011, the Ninth District found that the trial court's original summary judgment order did not resolve one of the parties' claims, and a subsequent nunc pro tunc entry disposing of the omitted claim was error. Id. at 5. Likewise, there is no indication in the record that the trial court addressed Youngstown and Ward's challenge to Adams' entrustment/training claims. Thus, this case must be remanded to litigate those issues.

Affirming the trial court's determination that Ward's conduct during the pursuit was merely negligent does not control the resolution of whether Youngstown recklessly, willfully or wantonly entrusted Ward with the vehicle or failed to train/inadequately trained him to a similar degree. To conclude otherwise, as the

majority does, " * * * overlooks the important distinction between a municipality's vicarious liability for the negligent acts of its officers and *a city's liability for its own negligence* in the hiring and training of officers and in the entrustment of vehicles to them." *Reynolds v. City of Oakwood* (1987), 38 Ohio App.3d 125, 129, 528 N.E.2d 578 (Emphasis Added).

In *Reynolds*, the officer and city were granted summary judgment on the basis of immunity as then defined in R.C. 701.02, but on appeal, only the judgment in favor of the officer survived, and the judgment in favor of the city was reversed. Id. at 126. On remand, the trial court granted a directed verdict in favor of the city on all of the plaintiff's claims, including negligent training and entrusting the vehicle to the officer. Id. Pertinent to my disagreement with the majority, the trial court had excluded any evidence regarding training, reasoning the prior ruling that the officer was immune made such evidence irrelevant. Id. at 129. Even though the Second District held there was a genuine issue of material fact whether the officer was acting recklessly or wantonly, Id. at 127-128, this was not the rationale for reversing the directed verdict in favor of the city on the training/entrustment claims. Unlike the majority here, the Second District recognized that while the city's *vicarious* liability was dependent upon whether or not the officer recklessly *operated* the vehicle, the city is *independently* liable for *its own negligence* in how it trains its officers and for entrusting them with vehicles. Thus the Second District held excluding this evidence was error, and the plaintiff was entitled to litigate her training and entrustment claims against the city. Id. at 129. I similarly believe Adams should be able to litigate her training and entrustment claims against Youngstown.

This court previously recognized in *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 737 N.E.2d 989, that in litigation involving police pursuits there are separate claims of vicarious and direct liability against a municipality. In *Wagner*, the plaintiff challenged summary judgment in favor of the officer and the village, arguing that there was a genuine issue of fact whether the village was reckless for not having high-speed pursuit training. Id. at 734. This court reversed, holding there was a genuine issue of material fact whether *the village itself* was negligent for failing to have a pursuit policy and failing to properly train the officer. Id. at 736. And in *Moore v. Columbus* (1994), 98 Ohio App.3d 701, 708, 649 N.E.2d 850, the Tenth District held that the officer did not act in a willful or wanton manner during a pursuit which resulted in an accident.

But in its discussion of the negligent training claim against the city, the court did not say the claim failed because the officer and city were immune, rather that the plaintiffs failed to present evidence showing the city was negligent in training its officers. Id. at 710.

As I would remand this case on Adams' two remaining claims, Youngstown's argument against the admissibility of the Arbitrator's Opinion should be addressed. The Arbitrator's Opinion was based upon, inter alia, testimony that was subject to cross-examination and a joint exhibit submitted to the arbitrator by Youngstown and Ward containing Ward's disciplinary record, undercutting any hearsay concerns. Interestingly, Kevin Mercer's affidavit attached to Youngstown and Ward's summary judgment motion states at ¶17 that he viewed the news video and also discusses the video's contents, and yet Youngstown and Ward argue the Arbitrator's Opinion is suspect because the arbitrator based his decision in part upon the video which is not in the record here.. Further, Evid.R. 404(B) permits the admission of evidence for the purpose of demonstrating knowledge, which is at the heart of Adams' entrustment claim against Youngstown; that the city entrusted the vehicle to Ward despite this knowledge. Finally, evidence of Ward's prior driving and discipline history is part of the record via Ward's testimony in his deposition, which was filed in its entirety with the trial court.

For these reasons, the Arbitrator's Opinion is properly part of the record. And because the trial court did not address the training/entrustment claims, the majority cannot review, let alone affirm, a decision that the trial court never made. Accordingly, the matter should be reversed in part and remanded to the trial court for consideration of Adams' entrustment and training claims against Youngstown.