DECISION AND JUDGMENT ENTRY
{¶ 1} The Estate of Jillian Marie Graves appeals the judgment of the Ross County Court of Common Pleas granting judgment on the pleadings in favor of the City of Circleville, and the John and Jane Doe Officers of the Circleville Police Department. The Estate argues that the trial court erred in granting judgment on the pleadings in favor of the Officers because the Estate specifically alleged that the Officers acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions. Additionally, the Estate argues that the trial court erred in granting the judgment on the pleadings in favor of the City on the basis that the City's negligence occurred in the course of performing a governmental function. Because we find that the Estate has alleged sufficient facts, which, if proven, could overcome the Officers' immunity, we sustain the Estate's first assignment of error. However, construing all allegations in the amended complaint in the Estate's favor, we conclude that the Estate can prove no set of facts in support of its claim that the City's alleged negligence occurred in its performance of a proprietary function. Therefore, we overrule the Estate's second assignment of error. Accordingly, we reverse the trial court's judgment in favor of the Officers, affirm the trial court's judgment in favor of the City, and remand this cause for further proceedings consistent with this decision.
 I. {¶ 2} This action arises out of a July 6, 2003 auto accident in which Jillian Graves' vehicle collided with a vehicle driven by Cornelius Copley. Graves died as a result of injuries she sustained in the accident.
 {¶ 3} Graves' Estate brought this action against the City of Circleville, John and Jane Doe Officers of the Circleville Police Department, and Fletcher's 24 Hour Towing. In its complaint, the Estate alleges that Copley was intoxicated and operating his vehicle on the wrong side of the road at the time of the accident. Copley has a long history of driving under the influence and multiple hit-and-run violations. On July 1, 2003, the State of Ohio suspended Copley's license until July 1, 2008 because he committed an OMVI in March 2003.
 {¶ 4} Despite his license suspension, Copley continued to drive. On July 4, 2003, the Circleville Police Department arrested him for driving under the influence of alcohol and/or drugs, driving under a suspended license, hit and run, and failing to maintain control of his vehicle within the proper marked lanes. At the time of his arrest, the Circleville Police Department impounded Copley's vehicle in a lot owned by Fletcher's. The Estate alleges that the City, the Officers, and Fletcher's negligently allowed Copley to retrieve his vehicle from the impound lot on July 5, 2003, two days before his initial appearance in court, in violation of R.C. 4507.38[2] and R.C. 4511.195.[3]
Thereafter, the Estate claims Copley drove his vehicle while intoxicated, crashing into a grocery store, a phone booth, and at least two parked cars before he turned onto Route 23 North, driving southbound, and collided with Graves' vehicle, causing her death.
 {¶ 5} In its complaint, the Estate alleges causes of action for: (1) negligence; (2) wrongful death; (3) Graves' pain and suffering before her death; and (4) respondeat superior. The Estate later amended its complaint to include allegations that the Defendants acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions in releasing Copley's car to him.
 {¶ 6} The City moved the court for judgment on the pleadings pursuant to Civ.R. 12(C), alleging that it was immune from the Estate's claims pursuant to R.C. 2744.02(A)(1).[4] Specifically, the City alleged that the actions the Estate complained of involved "governmental" rather than "proprietary" functions, and, therefore, no exception to the City's immunity applied.
 {¶ 7} The trial court found that the City and the Officers were engaged in a governmental function, and were, therefore, immune from liability for their actions under R.C. 2744.02(A)(1). Accordingly, the trial court granted the City and the Officers judgment on the pleadings, and dismissed the Estate's amended complaint.
 {¶ 8} The Estate appeals, raising the following assignments of error: "1. The trial court erred when it granted Judgment on the Pleadings in favor of the John/Jane Doe Officers of the Circleville Police Department on the basis of governmental immunity, because the Amended Complaint plainly alleges that the officers acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions. [Journal Entry, dated April 9, 2004]. 2. The trial court erred as a matter of law when it granted Judgment on the Pleadings in favor of the City of Circleville when the City's negligence occurred in the course of performing a proprietary activity. [Journal Entry, dated April 9, 2004]."
 II. {¶ 9} A motion for judgment on the pleadings pursuant to Civ.R. 12(C) is, essentially, a belated Civ.R.12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Nelson v. Pleasant
(1991), 73 Ohio App.3d 479, 482. Judgment on the pleadings is appropriate if, in construing all material allegations in the complaint in favor of the nonmoving party, the court finds, beyond doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. State ex rel. Midwest Pride IV, Inc. v. Pontious,75 Ohio St.3d 565, 570, 1996-Ohio-459. We review the entry of judgment on the pleadings de novo, granting no deference to the trial court's judgment. Fontbank, Inc. v. CompuServe, Inc. (2000), 138 Ohio App.3d 801,807.
 A. {¶ 10} For ease of discussion, we shall address the Estate's assignments of error out of order. In its second assignment of error, the Estate argues that the trial court erred in granting judgment on the pleadings to the City because its injury occurred as a result of the City's negligent performance of a proprietary, rather than a governmental, function. Therefore, the Estate argues that the City is not immune from suit.
 {¶ 11} R.C. 2744.02(A)(1) classifies the functions of political subdivisions as either governmental or proprietary, and provides broad immunity to a political subdivision and its employees for torts caused by any act or omission of the political subdivision or its employees in connection with both governmental and proprietary functions. The statute then sets forth exceptions to that broad grant of immunity. Specifically, R.C. 2744.02(B)(2) provides that, except in certain enumerated circumstances, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions.
 {¶ 12} Governmental functions generally include: (1) functions that are imposed upon the state as an obligation of sovereignty and performed by the state or a political subdivision either voluntarily or pursuant to legislative requirement; (2) functions that are for the common good of all citizens of the state; and (3) functions that promote or preserve the public peace, health, safety, or welfare and involve activities that are not customarily engaged in by nongovernmental persons. R.C.2744.01(C)(1)(a)-(c). The following are specifically included in the definition of a governmental function: (1) the provision or nonprovision of police protection and (2) the enforcement or nonperformance of any law. R.C. 2744.01(C)(2)(a) and (i).
 {¶ 13} In contrast, proprietary functions include: (1) any function that is not specifically defined as a governmental function, and that involves activities that are customarily engaged in by nongovernmental persons and (2) certain functions specifically enumerated in R.C.2744.01(G)(2). R.C. 2744.01(G)(1)(a)-(b). The only proprietary function specifically enumerated by the statute that is relevant to the facts before us is "[t]he operation and control of a public * * * off-street parking facility." R.C. 2744.01(G)(2)(e).
 {¶ 14} The Estate argues that the trial court erred in finding that the alleged negligent actions of the City and its employees occurred in the performance of a governmental function for which the City enjoyed governmental immunity. The Estate contends that the actions of the City and its employees occurred in the performance of a proprietary function.
 {¶ 15} First, the Estate argues that the initial seizure of a drunk driver's car is a governmental function, but that once the car is seized, the governmental function ends. Thereafter, the Estate notes that, under R.C. 4511.195(B)(4), the car may be stored in a police lot or a private commercial lot. Thus, the Estate reasons that once the City impounds the car, the City is nothing more than a bailee. We disagree.
 {¶ 16} In Bader v. Cleveland (February 18, 1982), Cuyahoga App. No. 44118, the Eighth District Court of Appeals recognized that a police department action that began as a governmental function could transform into a proprietary function as the action progressed. Specifically, the Eighth District found that the impounding of suspected stolen vehicles was a governmental function of the police department, but, that at some point, after the vehicle owner was identified and notified of the whereabouts of the car, police contact with the vehicle amounted to nothing more than storage, which a non-governmental entity could perform. Id. at 3. Therefore, once a reasonable period of time passed after the police notified the owner of the location of his car, the city could be liable for its negligent acts that resulted in the theft of a car stored on its impound lot. Id.
 {¶ 17} Here, unlike the situation in Bader, the City's governmental function could not yet have transformed into the proprietary function of merely storing Copley's car. In Bader, the police impounded a suspected stolen car for the purpose of protecting the car until it could be returned to its rightful owner. As the Estate explicitly acknowledges, the City had a continuing statutory obligation to keep Copley's car impounded at least until his initial court appearance on July 7, 2003 in order to protect the public from a suspected, unlicensed, drunk driver. Pursuant to R.C. 2744.01(C)(2)(i), the City's enforcement or nonperformance of those laws is a governmental function.
 {¶ 18} Furthermore, the Estate recognizes that the "obvious purpose of [R.C.] 4507.38 and [R.C.] 4511.195 is to prevent a dangerous driver from gaining access to his vehicle before a Court has an opportunity to determine whether the defendant poses a threat to people like Jill Graves if the vehicle is released." This purpose falls within the governmental function of "the provision or nonprovision of police * * * services or protection." R.C. 2744.01(C)(1). Therefore, the Estate's argument that once the City impounded Copley's car, the governmental function of impounding the car converted to the proprietary function of serving as a bailee must fail.
 {¶ 19} The Estate's remaining argument that the City is liable for its alleged negligence is that the negligence occurred while the City engaged in the proprietary function of operating an off-street parking facility under R.C. 2744.01(G)(2)(e). The Estate argues that the lot where the City stored Copley's car qualifies as an "off-street parking facility" because it is a facility, separate from the street, where cars are parked. In contrast, the City argues that the lot where it stored Copley's car was an "impound lot" rather than an "off-street parking facility."
 {¶ 20} The goal of statutory construction is to give effect to the legislature's intention. Cline v. Ohio Bur. of Motor Vehicles (1991),61 Ohio St.3d 93, 97, citing Carter v. Youngstown (1946), 146 Ohio St. 203, at paragraph one of the syllabus. Where the statutory language is "plain and unambiguous and conveys a clear and definite meaning," a court does not need to apply rules of statutory interpretation. Meeks v.Papadopulos (1980), 62 Ohio St.2d 187, 190, citing Sears v. Weimer
(1944), 143 Ohio St. 312, paragraph five of the syllabus. We construe words in common use in their ordinary significance and with the meaning commonly attributed to them. Eastman v. State (1936), 131 Ohio St. 1, paragraph five of the syllabus. Under R.C. 1.42, we read words and phrases in context and construe them according to the rules of grammar and common usage.
 {¶ 21} Here, R.C. 2744.01(G)(1)(e) declares that "[t]he operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility" are proprietary functions. The adjective "public" is grammatically implied without specific repetition before each of the subsequent list of facilities or organizations in the series. See, e.g.,Barger v. Knedler (April 29, 1980), Fayette App. No. 79CA14, at 7 (Holding that where there was a series of similar obligations preceded by the word "all," the rules of rhetoric and grammar implied the word all before each of the subsequent obligations in the list to avoid clutter and redundancy.) Therefore, in determining whether the City's actions are properly classified as governmental or proprietary functions we must determine whether the City operated and controlled a public offstreet parking facility.
 {¶ 22} In its amended complaint, the Estate does not directly allege that the City operated and controlled a public off-street parking facility. On the contrary, the Estate specifically alleges that "the police seized Copley's vehicle and ordered it impounded in a lot owned by defendant, Fletcher's."
 {¶ 23} Black's law dictionary defines the adjective "public" as "[o]pen to all; notorious[; c]ommon to all or many; general; open to common use." Nothing in the amended complaint suggests that Fletcher's lot was a public parking facility, open to common use. Black's Law Dictionary (6th Ed. Rev. 1990) 1227. Even if we presume that Fletcher's lot was open to the public in the sense that persons conducting business with Fletcher's could park there, the United States Supreme Court has held that "property [does not] lose its private character merely because the public is generally invited to use it for designated purposes." LloydCorp., Ltd. v. Tanner (1972), 407 U.S. 551, 569 (Holding that the owner of a privately owned and operated shopping mall could prohibit persons from distributing anti-war materials in the mall. Although the mall was open to the public, in the sense that customers and potential customers were invited and encouraged to enter, the mall had not been dedicated to public use for general purposes.)
 {¶ 24} Here, the Estate fails to allege that Fletcher's lot was anything but a privately owned impound lot. Therefore, construing all material allegations in the amended complaint in the Estate's favor, we find that the Estate cannot prove that the alleged negligent actions occurred in the course of the City's operation and control of a public off-street parking facility. Accordingly, we overrule the Estate's second assignment of error.
 B. {¶ 25} In its first assignment of error, the Estate contends that the trial court erred in granting judgment on the pleadings to the Officers based upon their entitlement to governmental immunity.[5] The Estate asserts that, under R.C. 2744.03(A)(6)(b), the Officers are not immune from liability for their wanton and reckless acts. In support of its argument, the Estate points to its allegations that the officers knew that: (1) Copley was an habitual drunk driver with multiple prior OMVI convictions; (2) Copley was driving while his license was under suspension; (3) they were to immediately remove Copley's license plates; and (4) they were to keep Copley's vehicle impounded until his initial court appearance. Additionally, the Estate notes that its amended complaint specifically alleges that the officers acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions.
 {¶ 26} In contrast, the City and the Officers claim that the allegations the Estate makes in its amended complaint are nothing more than legal conclusions. They argue that, in order to avoid judgment on the pleadings, the Estate must allege sufficient operative facts to form the basis of the alleged reckless, willful, or wanton misconduct.
 {¶ 27} Here, the Estate made the following allegations in its amended complaint relevant to the officers reckless and/or wanton actions: (1) Copley had multiple OMVI convictions before July 6, 2003, including two OMVIs in 2003; (2) Copley had been arrested multiple times for driving under the influence of alcohol and/or drugs; (3) Copley had multiple hit-and-run violations; (4) on July 4, 2003, the Officers arrested Copley for driving while intoxicated after he sideswiped a parked car and fled the scene; (5) at the time of his arrest, Copley informed the Officers that he was driving under a suspended drivers license as a result of a prior OMVI; (6) the Officers charged Copley with driving under the influence of alcohol and/or drugs, driving under a suspended license, hit-and-run, and failing to maintain control of his vehicle within the proper marked lanes; (7) the Officers seized and impounded Copley's vehicle at the time of his arrest; (8) Copley's car was to remain impounded until his initial court appearance on July 7, 2003, under R.C.4507.38, because he was charged with driving under a suspended or revoked Ohio driver's license; (9) Copley's vehicle was to remain impounded until his initial court appearance because R.C. 4511.195 requires impoundment in all cases of OMVI arrest where the defendant has been convicted of or has plead guilty to an OMVI offense within the prior six year period; (10) the purpose of R.C. 4507.38 and 4511.195 is to prevent a dangerous driver from gaining access to his vehicle before a Court has an opportunity to determine whether the defendant poses a threat to the public if the vehicle is released; (11) despite the law, the Officers allowed Copley to obtain his vehicle from the impound lot on July 5, 2003, two days before his scheduled initial court appearance; and (12) the officers acted wantonly, recklessly, and with complete disregard for the foreseeable consequences of their actions.
 {¶ 28} Construing the above allegations most strongly in the Estate's favor, we find that the Estate has alleged sufficient facts, which, if proven, could overcome the Officers' immunity. Accordingly, we sustain the Estate's first assignment of error.
 {¶ 29} In conclusion, we overrule the Estate's second assignment of error, and sustain the Estate's first assignment of error. Therefore, we affirm the judgment of the trial court in part, reverse it in part, and remand this cause for further proceedings consistent with this decision.
Judgment Affirmed in Part, Reversed in Part, and Remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment and Opinion to Assignment of Error I; Concurs in Judgment Only to Assignment of Error II.
[2] At the time of Copley's arrest, R.C. 4507.38 required a law enforcement agency arresting a person for driving without a valid license to seize the vehicle and plates and hold them at least until the operator's initial court appearance. R.C. 4507.38(B)(1). R.C. 4507.38 has since been amended by Am. Sub. S.B. 123, and recodified in R.C. 4510.41.
[3] At the time of Copley's arrest, R.C. 4511.195 provided that, when arresting a person for driving under the influence of alcohol who had been convicted of a similar offense within the six previous years, a law enforcement agency must seize the vehicle the person was operating at the time of the alleged offense and its license plates. R.C. 4511.195(B)(1). The law enforcement agency must hold the vehicle at least until the operator's initial court appearance. R.C. 4511.195(B)(2).
[4] The Officers did not move the court for judgment on the pleadings.
[5] Although, Civ.R. 12(C) plainly contemplates a motion for judgment on the pleadings, the trial court, sua sponte, granted judgment on the pleadings in favor of the John and Jane Doe officers. The Estate has failed to assert this as error on appeal. Therefore, we do not address it here.