[Cite as *DeMartino v. Poland Local School Dist.*, 2011-Ohio-1466.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MARK DeMARTINO | ) | CASE NO. 10 MA 19 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| THE POLAND LOCAL SCHOOL DISTRICT, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:  Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 09CV2817

JUDGMENT:  Affirmed in part. Reversed and Remanded in part.

APPEARANCES:
For Plaintiff-Appellee:  Atty. Dennis P. Mulvihill
Atty. Joseph P. Dunson
Lowe, Eklund, Wakefield & Mulvihill Co.
610 Skylight Office Tower
1660 West Second Street
Cleveland, Ohio  44113-1454

For Defendants-Appellants:  Atty. David Kane Smith
Atty. Krista K. Keim
Atty. Lindsay F. Gingo
Britton, Smith, Peters & Kalail Co.
3 Summit Park Drive, Suite 400
Cleveland, Ohio  44131

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Cynthia Rice, of the Eleventh District Court of Appeals, sitting by assignment.

Dated: March 24, 2011

WAITE, P.J.

{1} Appellants, Poland Local School District, Poland Local School District Board of Education, Nick Olesko, and Ben Mashburn, appeal the judgment entry of the trial court overruling their motion for judgment on the pleadings based on governmental immunity. In their first assignment of error, Appellants contend that the trial court erred in denying statutory immunity to the school district and the board. In their second assignment of error, Appellants contend that the trial court erred in denying statutory immunity to Olesko and Mashburn.

{2} The following facts are taken from the complaint. On or about August 16, 2007, Appellee, Mark DeMartino, a student at Poland Seminary High School and a member of the Poland Seminary High School Band, was participating in band practice at the high school, which was supervised by the band director, Olesko. (Compl., ¶6, 15.) Approximately 260 students participated in band practice that day. (Compl., ¶11.) At the same time, Mashburn, a school employee, was mowing various athletic fields and lawns adjacent to the school. (Compl., ¶7.)

{3} The high school had two safety rules in place to protect students from the dangers associated with commercial grade lawn mowers. Employees were not permitted to mow in the vicinity of students, and when mowing without a bag,

employees were required to attach the manufacturer-provided discharge chute. (Compl., ¶8.)

{4} The instructions provided by the manufacturer of the commercial lawn mower include warnings that the mower blades rotate at a high rate of speed and may pick up and shoot debris causing serious injury. The instructions recommend that debris should be collected before mowing, people should not be in the general area to be mowed, and all safety devices should be properly installed. (Compl., ¶11.)

{5} At some point during band practice, Mashburn asked Olesko for permission to mow an area near the parking lot where the band was practicing. (Compl., ¶8.) Olesko did not object. (Compl., ¶15.) Mashburn removed the bag from the commercial lawn mower but did not install the discharge chute. (Compl., ¶9.) A metal object ejected by the lawnmower struck Appellee in the head and cut an artery, which caused him to lose consciousness. (Compl., ¶15.)

{6} Appellee suffered head and neurologic injuries, including but not limited to a traumatic brain injury, multiple skull fractures, a subarachnoid hemorrhage, a subdural hematoma, and a parenchymal edema. As of the date that the complaint was filed, he continues to suffer paralysis on the left side of his face, pain, headaches, dizziness, and touch and sensation deficits in his left hand. (Compl., ¶17.)

{7} Appellants filed a motion for judgment on the pleadings. A Civ.R. 12(C) motion for judgment on the pleadings is designed to review the pleadings, and only the pleadings, on matters of law. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161,

166, 297 N.E.2d 113. Dismissal under Civ.R. 12(C) is appropriate, "where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. The trial court denied the motion in its entirety. This timely appeal followed.

{8} "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus. For the following reasons, the judgment of the trial court is reversed with respect to Olesko, and is affirmed with respect to the school district, the board, and Mashburn.

<u>ASSIGNMENT OF ERROR 1:</u>

{9} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING DEFENDANT BOARD STATUTORY IMMUNITY FROM LIABILITY ON PLAINTIFF'S CLAIMS UNDER R.C. 2744."

{10} Governmental immunity for political subdivisions in Ohio involves a three-tiered analysis. First, pursuant to R.C. 2744.02(A), general immunity applies when the political subdivision or its employee is engaged in a governmental or

proprietary function. Second, the political subdivision may forfeit general immunity based upon several exceptions listed in R.C. 2744.02(B). Third, in the event that one of the exceptions listed in subsection (B) is applicable, the political subdivision must then prove that one of the defenses listed in R.C. 2744.03 applies in order to be immune from suit.

{11} Pursuant to R.C. 2744.01(F), "political subdivision" is defined as "a municipal corporation, township, county, *school district*, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state * * *." (Emphasis added.) Therefore, the district and the board are protected under the first tier of the analysis.

{12} In the second tier of the analysis, we must determine whether any of the exceptions listed in R.C. 2744.02(B) are applicable to the duties performed by Olesko and Mashburn. With respect to Olesko, Appellee contends his injury was caused by Olesko's negligent performance of his duties as band director. Appellee argues that Olesko was negligent when he authorized Mashburn to mow near the parking lot where the band was practicing.

{13} R.C. 2744.02(B)(2) reads, in pertinent part, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Therefore, if operating a school band is a proprietary function and Olesko was negligent, the school district and board forfeit their general immunity pursuant to the exception listed in R.C. 2744.02(B)(2).

**{14}** The legislature has defined governmental and proprietary functions for the purpose of immunity. R.C. 2744.01(C)(1) provides:

**{15}** " 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

**{16}** "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

**{17}** "(b) A function that is for the common good of all citizens of the state;

**{18}** "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."

**{19}** R.C. 2744.01(C)(2) provides a nonexhaustive list of governmental functions. Among the examples is "[t]he provision of a system of public education." R.C. 2744.01(C)(2)(c).

**{20}** R.C. 2744.01(G)(1) states:

**{21}** " 'Proprietary function' means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

**{22}** "(a) The function is not [a governmental function];

**{23}** "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

{24} R.C. 2744.01(G)(2) provides examples of proprietary functions. Such examples include "[t]he operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility." R.C. 2744.01(G)(2)(e).

{25} Appellants argue that the operation of a school band is part and parcel of the provision of a system of public education, and, therefore, is a governmental function. Appellee argues that since the operation of a "band" is specifically listed in R.C. 2744.01(G)(2), this is a proprietary function.

{26} "[W]hen a statute is unambiguous, [a court] should not attempt to determine what the legislature intended, but should instead merely apply the law as written." *WCI, Inc. v. Ohio Liquor Control Comm.*, 116 Ohio St.3d 547, 549, 2008-Ohio-88, ¶11. The plain language of R.C. 2744.01(G)(2) classifies the operation of a public band as a proprietary function.

{27} The term "public" modifies all of the facilities and organizations listed in R.C. 2744.01(G)(2)(e). In *Estate of Graves v. City of Circleville*, 4th Dist. No. 04CA2774, 2005-Ohio-929, the estate of a woman killed by a drunk driver alleged that the city was responsible for her death. The drunk driver's car had been impounded by the police and stored in a privately-owned lot, but, shortly before the accident, employees of the lot permitted the driver to remove his car from the lot in violation of Ohio law. The estate argued that the privately-owned lot was "off-street parking," and, therefore, the state was involved in a proprietary function when the car was stored on the private lot. The Fourth District's resolution of the case turned on

the definition of "off-street parking," as that term is used in R.C. 2744.01(G)(2).  The *Graves* Court wrote:

**{28}**  "Here, R.C. 2744.01(G)(1)(e) declares that '[t]he operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility' are proprietary functions.  The adjective 'public' is grammatically implied without specific repetition before each of the subsequent list of facilities or organizations in the series.  See, e.g., *Barger v. Knedler* (April 29, 1980), [12th Dist.] No. 79CA14, at *7 (Holding that where there was a series of similar obligations preceded by the word 'all,' the rules of rhetoric and grammar implied the word all before each of the subsequent obligations in the list to avoid clutter and redundancy.)  Therefore, in determining whether the City's actions are properly classified as governmental or proprietary functions we must determine whether the City operated and controlled a *public* off-street parking facility."  (Emphasis in original.)  Id., ¶21.  The same "grammatical[ ] impli[cation] without specific repetition" applies in this case.

**{29}**  Appellee's interpretation of the statute ignores the fact that the term "band" is modified by the term "public" in the statute, and thus, we must interpret this section to refer to a "public band."  In this case, the band at issue is a school band.  School bands are not "public" bands, but instead an extension of the school's music program, and, hence, a part of the provision of a system of public education.  Appellants suggest that the band at issue is a "public school band."  However, it is clear even from the pleadings that membership in the Poland Seminary High School

Band is not open to all members of the public. While it is operated by a public school system, this does not change the real nature of the band from part of the school's educational process to an open, public forum. As a consequence, Olesko was performing a governmental function when he conducted band practice, and the district and board are statutorily immune from suit based on Olesko's alleged negligence. Further, Appellee does not contend that any of the exceptions to immunity listed in R.C. 2744.02 apply to the allegations against Olesko.

{30} In reaching our conclusion that the school board is not operating a public band, we rely, as we must, exclusively on the pleadings in this case. Appellee clearly states he is a student, and was participating in that capacity in his high school marching band. Appellants additionally contend that Appellee was receiving school credit for his band membership, based on averments in the affidavit of Robert L. Zorn, the superintendent of the school district, attached to their motion for judgment on the pleadings. According to Zorn, members of the marching band receive one class credit for their participation. However, we may not consider this affidavit because Appellants' motion sought judgment on the pleadings, and the trial court did not convert that motion to a motion for summary judgment. Hence, our decision, like the trial court's judgment, is based exclusively on the pleadings in this case.

{31} Turning to the allegations surrounding Mashburn, maintaining public grounds is a governmental function. See R.C. 2744.01(C)(1)(a). Therefore, Mashburn was performing a governmental function when Appellee was injured. However, Appellee argues that he was injured as a result of a physical defect within

or on the grounds of the school building as well as Mashburn's negligence. Based on these allegations, the school district and the board are not entitled to general immunity, pursuant to one of the exceptions listed in R.C. 2744.02.

**{32}** R.C. 2744.02(B)(4) reads, in its entirety:

**{33}** "Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."

**{34}** R.C. 2744.02(B)(4) was revised effective April 9, 2003. The previous version imposed liability for injury, death or loss caused by the negligence of an employee of a political subdivision on or within the grounds or buildings used in connection with a governmental function. Under the revised version of R.C. 2744.02(B)(4), in addition to requiring a negligent act, the exception to immunity requires that the injury, death, or loss be due to a defect on or within the grounds or buildings of the political subdivision. *Alden v. Kovar*, 11th Dist. Nos. 2007-T-0114, 2007-T-0115, 2008-Ohio-4302, ¶49.

**{35}** Appellee relies on two cases to argue that the commercial lawn mower without the discharge chute may constitute a physical defect within or on school

grounds. In *Moss v. Lorain County Board of Mental Retardation*, 9th Dist. No. 09CA009550, 2009-Ohio-6931, a seven-year old child with Down syndrome wandered into the kitchen area of his classroom and spilled a pot of hot coffee on his chest. According to school policy, students were not to be left unattended in the kitchen.

**{36}** In order to satisfy the two-pronged requirement in R.C. 2744.02(B), the child's mother argued that "in light of the negligent design, maintenance, and construction of the kitchen, it contained 'physical hazards' that threatened the safety of the special-needs students." Id. at ¶16. She further argued that the board employees supervising her son were negligent in allowing him to wander into the kitchen without supervision. Id. The Ninth District concluded that Moss had alleged sufficient facts, if proven, to demonstrate that R.C. 2744.02(B)(4) applies.

**{37}** In *Bolling v. North Olmstead City School Board of Education*, 8th Dist. No. 90669, 2008-Ohio-5347, a student in shop class amputated several fingers while he was using a jointer machine. The student had passed a jointer test given by his shop teacher three times before he was permitted to use the machine, however, the shop teacher conceded that he turned away from the student just prior to the accident. The shop teacher also claimed that he performed regular maintenance on the machine.

**{38}** In order to satisfy the two-pronged requirement in R.C. 2744.02(B), the student's mother alleged that the shop teacher negligently supervised Bolling's use of the jointer machine, and that the machine itself was defective. The machine was not

used after Bolling was injured, and when it was produced during discovery, the guard on the machine was opened and would not close, a defect that the shop teacher testified would only result from at least five years of neglect. The *Bolling* Court stated:

**{39}** "Martin's injuries occurred on the school grounds in connection with a governmental function (i.e., the provision of a public education). Appellees allege and have produced some evidence that the injuries resulted from a defect on the ground, that being a defect in the jointer machine. Finally, appellees assert that the injuries were caused by the negligence of an employee of the school. There is evidence from which reasonable minds could differ as to whether Vlasak was negligent in the manner he instructed and supervised Martin's use of the power jointer or in the manner he maintained the power jointer. The second tier of the analysis is satisfied." Id., ¶23.

**{40}** R.C. 2744.02(B)(4) requires that two separate elements must be met, employee negligence and a physical defect within or on the grounds. Appellants contend that Appellee is impermissibly combining the two requirements, here. In *Bolling*, the Eighth District held that the first prong of the test could be satisfied with evidence that the shop teacher was negligent "in the manner he instructed and supervised Martin's use of the power jointer or in the manner he maintained the power jointer." Id. Because the shop teacher's failure to maintain the jointer machine appeared to be the cause of the physical defect in that case, the Eighth District's holding in *Bolling* runs counter to Appellants' argument.

**{41}** The Ohio Supreme Court reached a similar conclusion in *dicta* in *Moore v. Lorain Metropolitan Housing Authority*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606. In *Moore*, two children died in a fire at an apartment building operated by a public housing authority. The administrator of the children's estates argued that they would have escaped injury if a housing authority employee had not removed the only working smoke detector in the building and negligently failed to replace it.

**{42}** After concluding that the housing authority was engaged in a governmental function, the *Moore* Court considered the exceptions to immunity listed in R.C. 2744.02. The Court wrote, "[w]e conclude that a unit of public housing is a building 'used in connection with the performance of a governmental function' within the meaning of R.C. 2744.01(C)(2). [The housing authority] is therefore liable for negligence if the deaths in this case were due to physical defects occurring on its property within the meaning of R.C. 2744.02(B)(4)." Id. at ¶24. The Court continued, "The final step in the analysis of (B)(4) is to determine whether absence of a required smoke detector is a 'physical defect' occurring on the grounds of LMHA's property. Because the trial court did not fully consider this issue, which, if established, would dissolve immunity, we must remand to the trial court for further proceedings." Id., ¶25. In *Bolling* and *Moore,* the negligence of the governmental employee apparently caused the physical defect at issue. Accordingly, the exception to sovereign immunity listed in R.C. 2744.02(B)(4) appears applicable here, at least as to a motion for judgment on the pleadings.

**{43}** In summary, in looking at the second tier of analysis, the complaint alleges that both Olesko and Mashburn were performing governmental functions when Appellee was injured. However, Appellee has sufficiently alleged that the exception listed in R.C. 2744.02(B)(4) may apply to the allegations against Mashburn in this case. Therefore, while the allegations in the pleadings are such that the school district and the board are, by law, immune from suit based on the allegations involving Olesko as director of the student high school band, the district is not immune from suit based on the allegations as they appear in the pleadings involving Mashburn.

**{44}** Because R.C. 2744.02(B)(4) provides an exception to sovereign immunity in this case, we must look to the third tier of analysis to determine whether immunity is restored to the school district and the board based on the defenses enumerated in R.C. 2744.03(A)(1) through (5). *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. Neither party to this appeal addressed this third step of the sovereign immunity analysis in their briefs.

**{45}** The Supreme Court of Ohio has determined that the defenses to imposition of liability of R.C. 2744.03 must be read more narrowly than the exceptions to immunity outlined in R.C. 2744.02(B). *Greene* at 561. The statutory defense applicable in this case is provided in R.C. 2744.03(A)(5), which states:

**{46}** "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials,

personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{47} In this case, the pleadings allege that Mashburn exercised judgment and/or discretion in determining how to use school equipment. According to the complaint, Mashburn mowed the lawn near the parking lot where the band was practicing, in contravention of school policy, and removed the bag from the lawn mower without installing the discharge chute. The statute provides that, despite the fact that general immunity has been lifted for the employee's actions, the school district and the board are still immune from suit unless Mashburn acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{48} Wanton, willful and/or reckless conduct is conduct that is a degree greater than negligence. *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶37; *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 730-731, 737 N.E.2d 989. Specifically, wanton misconduct is "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." Id. Willful conduct involves a more positive mental state than wanton misconduct and implies intent. Id. at 731. That intention relates to the conduct, not the result. Id. It is an intentional deviation from a clear duty or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. Reckless conduct is conduct that was committed knowing the facts or having reason to know the facts

and which leads a reasonable person to know that his conduct will in all probability result in injury. *Rankin* at ¶37.

**{49}** Typically, issues regarding recklessness, wantonness or willfulness are questions for the jury to decide. However, the standard of proof for such conduct is high. *Adams v. Ward*, 7th Dist. 09 MA 25, 2010-Ohio-4851, ¶27. When the facts presented show that reasonable minds could not conclude that the conduct at issue meets that high standard, a court may determine that such conduct is not willful, wanton or reckless as a matter of law. Id.

**{50}** Because Appellants requested judgment on the pleadings, we are restricted to a review of the allegations, alone. Accepting the facts alleged in the complaint as true, Mashburn ignored school policy when he mowed lawn near the parking lot where the band was practicing, and he operated the commercial lawn mower without the discharge chute. The proximity of the lawn to the parking lot is not clear from the complaint. However, according to the complaint, approximately 260 students participated in band practice that day. The presence of a marching band, particularly a band marching in formation, could increase the probability that debris ejected from the commercial lawn mower would strike a member of the band. Therefore, Appellee has sufficiently alleged wanton, willful, and reckless conduct on the part of Mashburn to survive dismissal on the pleadings, here.

**{51}** Based on the facts alleged in the complaint, Olesko was engaged in a purely governmental function, that is, conducting the school band, when Appellee was injured. Because Appellee does not contend that any of the exceptions in R.C.

2744.02 apply to Olesko, the school district and board are immune from suit based on the allegations as they regard Olesko. Mashburn was also engaged in a governmental function when Appellee was injured, but an exception to immunity appears to apply in this case. Further, although Mashburn can be said to have exercised discretion when he mowed the lawn near the band and removed the bag without installing the discharge chute, Appellee has sufficiently alleged willful, wanton, and reckless conduct on his part. Therefore, as to these allegations, the school district and the board are not immune from suit based solely on the pleadings. Accordingly, Appellants' first assignment of error is sustained in part, with respect to the allegations directed at Olesko, and denied in part, with respect to the allegations regarding Mashburn.

ASSIGNMENT OF ERROR 2:

{52} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING DEFENDANTS OLESKO AND MASHBURN STATUTORY IMMUNITY FROM LIABILITY ON PLAINTIFF'S CLAIMS UNDER R.C. 2744."

{53} Employees of political subdivisions engaged in governmental or proprietary functions are immune from liability unless it can be shown that (a) an employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities, (b) an employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c)

civil liability is expressly imposed on an employee by a section of the Revised Code. See R.C. 2744.03(A)(6).

{54} We have previously stated that for purposes of immunity, "wanton or reckless" misconduct under R.C. 2744.03(A)(6) is the functional equivalent of "willful or wanton misconduct" under R.C. 2744.02(B)(1)(a). *Wagner*, supra, at 731, quoting *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 514-516, 605 N.E.2d 445 (dealing with R.C. 2744.02(B)(1)(b) with firefighter's liability). Therefore, as Appellee has successfully alleged, at least, willful, wanton, and reckless conduct on the part of Mashburn pursuant to R.C. 2744.02(B)(1)(a), the same is true under R.C. 2744.03(A)(6).

{55} Turning to Olesko, it is alleged that he ignored school policy when he authorized Mashburn to mow lawn near the parking lot where the band was practicing. However, Appellee does not allege that Olesko was aware Mashburn was operating the lawn mower without the discharge chute. Although Olesko's conduct, if proven, may constitute negligence, it does not constitute wanton, willful, or reckless conduct. The likelihood of injury in this case is attributed in the complaint to Mashburn's failure to attach the discharge chute. Because Appellee did not allege that Olesko was aware that the discharge chute was not attached, Appellee has not sufficiently alleged that Olesko knew or had reason to know that injury was likely to occur. Consequently, Olesko's alleged conduct cannot rise to the level of wanton or reckless misconduct required under R.C. 2744.03(A)(6).

**{56}** Appellee has alleged sufficient facts to survive the motion for judgment on the pleadings on behalf of Mashburn, but not Olesko. Accordingly, Appellants' second assignment of error is sustained in part, with respect to Olesko, and overruled in part, with respect to Mashburn.

**{57}** Based on the foregoing, both Olesko and Mashburn were performing governmental functions at all times relevant to the complaint. However, Appellee correctly argues that the exception to immunity listed in R.C. 2744.02(B)(4) applies to the allegations against Mashburn, and, therefore, the judgment of the trial court overruling the motion for judgment on the pleadings on behalf of the school district and the board is affirmed. Furthermore, Appellee has alleged sufficient facts that, if proven, could demonstrate that Mashburn acted with malicious purpose, in bad faith, or in a wanton or reckless manner. However, Appellee has not alleged sufficient facts that, if proven, could demonstrate that Olesko acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Consequently, the judgment of the trial court overruling the motion for judgment on the pleadings is affirmed with respect to Mashburn, and reversed with respect to Olesko.

Donofrio, J., concurs.

Rice, J., concurs.